# THE CLERKS' INVESTMENT COMPANY

*v.*

# SYDNOR.

---

APPELLATE PRACTICE; APPEALABLE ORDERS; ASSIGNMENTS OF ERROR; EQUITY; VOLUNTARY ASSOCIATIONS; TRUSTEES; COSTS ON APPEAL.

1. An order overruling a motion for a rehearing in equity is not appealable.

2. An assignment of error on an appeal in any equity cause, " That it was error to pass any decree in favor of the complainant in the cause," is too general to be considered.

3. Where the constitution of an unincorporated association organized for the purpose of investing the funds of its members in real estate, limited its existence to three years, after the lapse of which time its affairs were to be wound up by the officers elected for the third year, who were to hold office until that should be accomplished, and more than five years elapsed after the expiration of such period without a sale of the real estate acquired by the association or a successful attempt made to wind up its affairs, it was *held,* affirming in part a decree of the lower court, that a court of equity was justified, at the suit of one of the members, in intervening to compel a settlement, by providing for a sale of the real estate and a distribution of the proceeds under the direction of the court.

3. In such a case, however, where it appeared that the title of the real estate of the association was in trustees chosen by the association and charged with the duty of selling it under direction of the board of directors for commissions less than those allowed court trustees, and no charges of wrongdoing or dereliction of duty were made against such trustees, the decree of the lower court which appointed the solicitors for the complainant and defendants respectively as trustees to sell, was *modified* in so far as it provided for sale by other trustees than those selected by the association itself.

4. Where, on an appeal in a suit in equity by a member of an unincorpo-
   rated investment association to wind up its affairs, the decree of
   the lower court was affirmed in part and modified in part, the
   respective parties were required to pay their own costs on appeal.

No. 1097.   Submitted November 7, 1901.   Decided December 3, 1901.

HEARING on an appeal by the defendants from a decree
of the Supreme Court of the District of Columbia appoint-
ing trustees to sell the real estate of an unincorporated in-
vestment association and to distribute the proceeds under
the direction of the court. *Affirmed in part and modified in
part.*

The COURT in its opinion stated the case as follows:

The Clerks' Investment Company, named as the prin-
cipal appellant in this case, is an unincorporated association
composed of seventy-four persons, among whom are com-
prised the appellee and the other appellants. The associa-
tion is designated as a joint-stock association, in which the
number of the shares of stock is limited to 250, and the par
value of each share is fixed at $180, required to be paid in
monthly instalments of $5 for each and every month for
three years, which is the time limited in its constitution for
the continuance of the organization. The purpose of the
association is declared in the constitution to be " to invest
the funds of its stockholders safely and profitably in real
estate within the District of Columbia for the mutual benefit
of its stockholders " — which we understand from the record
to mean to buy and sell real estate, and to divide the profits
among the members.

Among various other details in the constitution with refer-
ence to the management of the affairs of the association and
the election and duties of the officers, it is provided that
there shall be a president, a vice-president, a secretary, and
a treasurer, and that these, with five others to be elected by
the stockholders, and all of whom should be themselves
stockholders, should constitute the board of directors to have

the management of the affairs of the association; that this board of directors, in the language of the constitution, should "manage the affairs of the company, make all contracts, purchases, sales, incumbrances and lettings, and incur such obligations as may be proper and necessary for the interests of the company, establish by-laws for their government, and declare dividends out of money in hand and not required to meet obligations." It is further provided in the same instrument that the board of directors should elect from their own number two trustees, whose duty it should be to "receive and hold in trust for the company the legal titles of all real estate," and "when required by the board of directors execute all conveyances of property held in trust for the company."

The constitution also contains the following clause: "The organization of this company shall be for three years. Any member wishing to withdraw within the first year is to receive the full amount paid in less any expense that may accrue *pro rata* to the number of shares such member may hold; and after one year such member is entitled to receive the full amount paid in less such expense with 4 per cent. per annum interest: Provided that such payments do not interfere with obligations already assumed by the board of directors. All payments of dues to this company shall cease at the expiration of three years from the organization, and the officers elected for the third year shall hold office until the affairs of this company are closed up."

The company was organized on March 22, 1892, and consequently its organization was to terminate on March 22, 1895. How many shares of stock were subscribed for or issued during the intervening period of three years, or how many withdrew from the organization during that period, if any, does not appear. But it does appear that at the time when the answer of the defendants to this cause in the court below was filed, that is, on March 7, 1901, there were 171 shares of stock outstanding, on which there had been payments to the amount of $24,184.50. This money was invested in the purchase of ten several lots of ground

in the northeastern section of the city of Washington, which are specified in the record of the cause before us, and which yet remain in the ownership of the association and are held by its trustees, but which, apparently, have depreciated in value to the sum of $12,500 or $15,000. They seem to have been purchased at a time when real estate in the city of Washington was held at a very high figure; and in the period of depreciation and depression following, from 1893 to 1898, and thereafter, it was found impossible to make sale of them at any reasonable price. It would seem that there were no purchasers to be found. In the meantime the taxes and public charges against the property would seem to have been paid by advancements made by some of the members of the association; and all the members of the association, except the appellee, seem to be willing yet to defer a sale of the real estate for a further and an indefinite time in the hope of increased values.

The appellee is the owner of two shares of the stock of the association, for which she has paid $360, which is their par value. She is not in accord with the other members of the organization on the subject of a further postponement of the settlement of its affairs. During the year before the institution of this suit she seems to have made several demands for withdrawal therefrom and payment to her of the value of her stock, with 4 per cent. interest, which she claimed she was entitled to have, in accordance with the provisions of the constitution of the company, which demands were refused. Thereupon, on October 24, 1900, she filed her bill in equity in the Supreme Court of the District, in which after statement of the organization and purposes of the company and some of the principal facts hereinbefore recited, she alleged that, inasmuch as the term of the organization of the company had been fully ended, she was entitled as one of its stockholders to have a settlement of its affairs and a distribution of its assets; and she prayed for the appointment of receivers to take charge of the affairs of the company, for a sale of the land above mentioned, and for a distribution of the assets among the members of

the association, after the payment of its debts, if any there should be found to be.

Besides the appellant association, she made eight persons by name defendants to the bill of complaint, and these she alleged to constitute the board of directors of the company. It appeared, however, from the answer to the bill that there were nine directors in all, as provided by the constitution, whose names are there given; that of the eight who are mentioned in the bill of complaint one had resigned and another person had been elected in his place; and that the two directors, who hold the real estate as trustees, and who are specified as such in the answer, are not designated and are not sued as such in the bill.

Answer, however, was made to the bill by the seven defendants named, who yet remain directors, and who comprise the two trustees in their number. In this answer objection is taken to the omission of the two directors who are not named, and to the failure of the complainant to join the two trustees as such as parties to the suit. And it is averred that the property has been carefully managed; that frequent efforts have been made without success to effect sales of it; that there has been no misconduct or negligence on the part of the officers; that all the taxes previous to those for the year 1900 have been paid, largely by voluntary advancements made by members of the association other than the complainant, who, it is averred, has never taken active interest in the affairs of the association; that the amount of these advancements is the sum of $1,095; that the pendency of this suit has prevented contributions for the taxes of the year 1900; that the complainant is the owner only of two shares of stock of the par value of $360, and stands alone against the 73 other stockholders, whose interests represent about $24,000; that, on January 28, 1901, at a general meeting of the stockholders, at which the action was harmonious and unanimous, a plan of settlement was devised and agreed upon whereby the property of the company was to be disposed of by the board of directors at cost price to the members of the association, with the privilege to purchasing members to use

their stock at its par value in part payment, or in payment in full, as the case might be, for the property so to be purchased by them; and that it is believed that this plan of settlement can be successfully carried into effect with speedy justice to all and to the general advantage.

The cause was set down by agreement for hearing on bill and answer; and thereupon the court adjudged that the complainant as a stockholder in the Clerks' Investment Company was entitled to have sale of the parcels of land yet held by or for the company, and to have the liabilities of the company determined and the proceeds of sale of the real estate distributed under the direction of the court; and it was, agreed that such sale should be had, and two trustees were appointed, who were the solicitors for the complainant and the defendants respectively, to make the sale and to report their proceedings to the court. Subsequently a motion for a rehearing was filed on behalf of the defendants, which was denied; and thereupon the defendants noted an appeal both from the decree and from the order denying the motion for a rehearing.

*Messrs. Brandenburg & Brandenburg* for the appellants.

*Mr. A. A. Birney* and *Mr. S. V. Hayden* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

In this court five assignments of error have been filed, which are in substance as follows:

(1) That it was error to adjudge that the complainant had a right to have the property of the company sold, the liabilities determined, and the proceeds of sale distributed.

(2) That it was error to displace the trustees appointed by the association, and to appoint others in their stead to make sale of the property.

(3) That it was error to hold that the appellee was entitled to have payment of her shares of stock until the property of the company should be sold.

(4) That it was error to refuse, on the motion for a rehearing, to vacate the decree that had been entered.

(5) That it was error to pass any decree in favor of the complainant in the cause.

Three of these need no consideration from us. They are the third, fourth and fifth. The third has no foundation in the record. The court below did not decree any such thing as is complained of by it. With reference to the fourth, we have repeatedly held that the rulings of the court below upon motions for a rehearing are not the subject of appeal to this court. It is useless to encumber the record with them. The fifth assignment, as we have also repeatedly held, is too general for the cognizance of this court. There are, therefore, only two assignments of error which require to be noticed, the first and second.

1. With reference to the first of these, we can scarcely regard it as having much foundation in the principles of equity. Neither in the brief nor in the oral argument submitted on behalf of the appellants does their contention appear to be addressed to the subject-matter of this assignment. The argument, in fact, has been mainly addressed to a question which we do not find to be in the case, the propriety of the appointment of receivers to take charge of the affairs of the company. But there is here no appointment of receivers, although the bill of complaint contained a prayer for such appointment. There is a very great difference between receivers appointed for the conservation and management of the affairs of a company and trustees appointed to make sale of its property. It may well be assumed from the record that neither fraud, nor mismanagement, nor insolvency, nor even negligence, nor any other sufficient cause, was shown in this case for the extraordinary intervention of the court by the appointment of receivers. On the contrary, it is quite apparent that the officers of this organization have acted in perfect good faith and for what they deemed to be the best interest of all the persons interested in the enterprise. The enterprise has been unfortunate, apparently from causes beyond their control. Undoubtedly there was no ground here

for the appointment of receivers. But none have been appointed; and the argument of the appellants on this point is, therefore, wholly irrelevant.

But that there was here good ground for the court of equity to make the adjudication which it did make, and which is in terms the subject of the first assignment of error, we have no doubt. It is very true that such adjudication would not be justified by the mere lapse of the three years limited for the continuance of the organization of the company; for it is very clear that the constitution of the company contemplated that there would be much to do after the termination of that period. Dues were payable in the last month of the term; investments might be made up to the last moment; parties might withdraw and be entitled to the repayment of their money at any time before the expiration of the three years; and in all probability it would be impossible to make sales of all the property and wind up the affairs of the company within that time. In fact, the probability that it would require some time beyond the three years to settle the affairs of the association was plainly contemplated in the provision of the constitution that the officers elected for the third year should hold office until the affairs of the company should be closed up. But beyond question it was contemplated that the affairs of the company should be settled and the association absolutely and wholly terminated within a reasonable time after the lapse of the three years of organization. Now, more than five years were permitted to elapse after March 22, 1895, and before these proceedings were instituted by the appellee, without any attempt, certainly without any successful attempt made to wind up the affairs of the association; and the conditions now remain in that regard precisely as they did on March 22, 1895. That this delay in the matter of settlement should, under ordinary circumstances, be regarded as unreasonable, can permit of no doubt; and that, on account of such unreasonable delay, a court of equity would be justified in intervening, at the suit of any complainant interested, to compel a settlement, we must hold as being beyond question.

It is true that much of this delay can be accounted for and was fully justifiable, and seems to have been acquiesced in by the complainant as well as by the other shareholders of the company. During all the years from 1893 to 1897 or 1898, there was a period of financial depression over the whole country, accompanied by great depreciation in the values of real estate in this District and elsewhere and by utter impossibility to dispose of real estate at any reasonable figure. This condition operated to compel the postponement of action by the board of directors and trustees of this association. In their answer in this cause they aver that they made several ineffectual attempts to get the property into the market for sale — at what time does not appear.

But these unfavorable conditions no longer exist. Prices, it is true, have not reached the point to which they had attained before the year 1893; but real estate in this District is again freely salable. It may be that the appellants hope for further advances in values, and that it would be wise and prudent for all the members of this association to await a more favorable opportunity to dispose of their property. But the anticipated advances are at most problematical; and it cannot be that the execution of a trust can be postponed indefinitely to await the advent of better times. For the board of directors and the trustees of this company have a trust to perform for the benefit of each and all the members of the company; and upon their failure to perform such trust, no matter how meritorious their motive may be, any member of the association, who deems himself aggrieved by such failure, is entitled to apply to a court of equity to enforce the performance of the trust; and it is for the court of equity in that case to determine whether further delay would be unreasonable, and thereupon to assume to itself the superintendence of the execution of the trust. This is in accordance with the elementary principles of equity jurisprudence, and scarcely needs citation of authority to support it. It will be sufficient to refer to the American and English Encyclopedia of Law, Vol. 27, p. 150, on the subject of Trusts, and cases there cited. Un-

doubtedly, therefore, the appellee was entitled to apply to the court of equity for relief, and it was competent for the court of equity to grant such relief.

2. But a somewhat different question is presented by the second assignment of error. It is there contended that the trustees chosen by the association should not be displaced, and others appointed to make the sale of the property which they are competent and willing to make; and in the justice of this contention we concur. There is no reason whatever assigned for the removal of the trustees chosen by the association. They are not charged with any wrongdoing or with any failure to do their duty, which is to sell the property of the association under the superintendence of the board of directors. It does not appear that they have received any direction from the board to sell; and there can be no dereliction on their part until there is some such direction given by the board and they fail to obey it. On the contrary, they come into court and profess that they are ready and willing to make the desired sale under the order and direction of the court; and they request to be permitted to make such sale, and to bring the money into court. And it is urged on their behalf that, under their arrangement with the association, they are required to make such sale for greatly smaller commissions than are allowed by the court of equity to the trustees appointed by it. Undoubtedly, under such circumstances, it is proper to permit them to act; and it is not proper summarily to divest them of the legal title with which they are now vested. While in the matter of trusts the execution of the trust is the important thing and the agency by which it is effected is secondary and relatively unimportant, yet the legal title vested in trustees should not be disturbed without some necessity for their removal. When they are ready and willing to execute the trust and in every way competent so to do, and especially when they can execute it with less cost than the officers who might be selected for the purpose by the court, it would seem to be unjust and unreasonable to discharge them summarily from their office. They may and

should be required to give bond, and in all other respects to comply with the orders of the court in the premises; and they may be removed if they fail so to do. But if they conform to the requirements of the court, they should be permitted to proceed with the execution of their trust.

In view of what we have said, it follows in our opinion that the decree appealed from should be in part *affirmed,* and in part *modified;* that it should be affirmed in so far as it adjudges that the affairs of the association should be settled and its property sold forthwith for that purpose; but that it should be modified in so far as it provides for a sale by other trustees than those selected by the association itself. The cause will be remanded to the Supreme Court of the District of Columbia, with directions so to modify its decree, and for such further proceedings therein as may be just and proper and according to law. The parties will pay their own costs in this court. And it is so ordered.